UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN ANDREW LUCAS,

                Plaintiff,

v.

**DECISION AND ORDER**

17-CV-00662

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of a Magistrate Judge [11].[1] Before me are the parties' cross-motions for judgment on the pleadings [9, 13]. Having reviewed the parties' submissions [9, 13, 16], I order that this case be remanded to the Acting Commissioner for further proceedings.

**BACKGROUND**

Plaintiff applied for DIB benefits on July 26, 2013 (R. 128), alleging a disability onset date of February 11, 2012 due to cardiac issues, post-cardiac surgery, bipolar disorder, depression, emotional outburst, panic attacks, anxiety and frequent insomnia (R. 149).[2] After plaintiff's claim for benefits was initially denied, an administrative hearing was held on October 6, 2015 before Administrative Law Judge ("ALJ") Stephen Cordovani (R. 36). ALJ Cordovani

---

[1]     Bracketed references are to the CM/ECF docket entries.

[2]     References denoted as "R." are to the administrative record [7]. Unless otherwise indicated, page references are to numbers located on the bottom of the document pages.

issued a decision denying benefits on February 16, 2016 (R. 18). The Appeals Council denied plaintiff's request for review, and plaintiff thereafter commenced this action.

## DISCUSSION

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error". Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

### B. Did the ALJ Properly Consider Plaintiff's Gambling and Pornography Addictions?

ALJ Cordovani determined that plaintiff suffered from severe impairments including ischemic heart disease and an affective disorder (R. 23). At stage two of the sequential process, he did not discuss the severity of plaintiff's addiction to gambling or pornography. In addition, in assessing plaintiff's residual functional capacity ("RFC"), ALJ Cordovani did not consider the impact of plaintiff's addictions to gambling and pornography as negative influences upon his ability to perform substantial gainful activity.

Plaintiff argues that ALJ Cordovani erred, at stage two of the analysis, by failing to consider his addictions to pornography and gambling as constituting severe impairments ([9-1], p. 15), and by relying upon his addictive conduct as positive evidence of his ability to perform work activities. [9-1], p. 19.

Addictions as Severe Impairments

A claimant is disabled under the Social Security Act if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months". Catalano v. Berryhill, 2018 WL 6437059, *6 (S.D.N.Y. 2018) *citing* 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. §§ 423(d)(3), 1382c(a)(3)(D).

The determination of whether or not an impairment is severe at step 2 of the sequential evaluation process is intended only to screen out *de minimus* claims. Dixon v. Shalala, 54 F.3d 1019, 1030-31 (2nd Cir.1995); Wilson v. Colvin, 2015 WL 1003933, at *19 (W.D.N.Y. 2015) ("The Second Circuit has held that the step-two severity test 'may do no more than screen out *de minimis* claims.'" (quoting Dixon, 54 F.3d at 1030)). Thus, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality . . . [with] no more than a minimal effect on an individual's ability to work'". Rosario v. Apfel, 1999 WL 294727, at *5 (E.D.N.Y. 1999) (quoting SSR 85–28, 1985 WL 56856, at *3 (Jan. 1, 1985)).

The record reflects that plaintiff's gambling addiction was diagnosed as "pathological" by his primary mental health provider, Shaun Crimmins, LMSW (R. 239, 254), and his psychiatrist, Dr. Sanjay Gupta (R. 344). Although Dr. Gupta noted plaintiff's "problems with gambling" and "going to strip clubs" (R. 418), he did not diagnose plaintiff as having a pathological addiction to pornography, nor did he characterize plaintiff's pornography habit as a manifestation of some other pathological impulse control disorder. While Dr. Gupta recommended that plaintiff go to gambling anonymous (R. 418), he made no such recommendation concerning plaintiff's pornography habit. However, he did determine that plaintiff's "ability to handle funds is impaired because of the severity of his gambling addiction and also going to strip clubs." Id.

Plaintiff has not cited, and I have not found, any authority finding that an addiction to pornography constitutes a medically determinable mental impairment. As noted above, plaintiff's pornography habit has not been diagnosed as pathological or as a manifestation of some other medically determinable impulse disorder. Plaintiff also argues that he has an inability to refrain from the "consumption of media (such as sports, or at times, South Park)". Plaintiff's Memorandum [9-1], p. 16. Once again, plaintiff has not presented authority suggesting that his television viewing habits are "pathological" or a manifestation of a medically determinable mental health disorder. Based upon this record, I cannot conclude that ALJ Cordovani erred in failing to consider these habits as constituting a severe impairment at stage two of the sequential process.

Pathological gambling, however, has been determined to constitute a severe impairment. *See* Johansen v. Astrue, 2011 WL 4583831, *9 (D. Minn. 2011) ("At step two, the ALJ plaintiff found that plaintiff had severe impairments of: pathological gambling disorder . . ."); Fertig v. Colvin, 2015 WL 5130397, *3 (D. Oregon 2015) ("personality disorder [pathological gambling]" found by ALJ to constitute a severe impairment); Davis v. Colvin, 2014 WL 2611346,

*2 (D. Oregon 2014) ("the ALJ determined that plaintiff had the following severe impairments: . . . pathological gambling in remission"); Aguon v. Astrue, 2011 WL 839568, *13 (E. D. Missouri 2011) ("the ALJ found that [plaintiff] has the following severe combination of impairments: . . . pathological gambling"); Sunwall v. Colvin, 158 F.3d 1077 (D. Oregon 2016) ("Plaintiff's bipolar disorder and gambling addiction considered in combination, meet or equal Listing 12.04 for affective disorders").

The Acting Commissioner does not argue that pathological gambling could not constitute a severe impairment, nor does she dispute the fact that ALJ Cordovani failed to determine the severity of plaintiff's gambling addiction at stage two of the sequential process. Instead, the Acting Commissioner discusses the evidence in the record relating to plaintiff's other psychological impairments as constituting a sufficient assessment of plaintiff's overall mental health. Acting Commissioner's Memorandum [13-1] p. 14-22. However, in light of the diagnoses of pathological gambling contained in the record, ALJ Cordovani was obligated to determine whether plaintiff's pathological gambling constituted a severe impairment at stage two of the sequential process.

As discussed below, ALJ Cordovani failed to adequately consider the negative impact of plaintiff's gambling addiction upon his ability to perform work activity on a sustained basis. Thus, ALJ Cordovani's failure to consider the severity of plaintiff's pathological gambling was not harmless. See Snyder v. Colvin, 2014 WL 3107962, *5 (N.D.N.Y. 2014) ("It is important to note that the mere fact that sequential evaluation proceeds beyond Step 2, does not, *ipso facto,* render a Step 2 error harmless. This harmless error construct is valid only when administrative law judges faithfully execute their responsibilities to consider *functional effects* of all impairments in subsequent steps. Before a reviewing court can declare a Step 2 error harmless, it must discern

something tangible on which to verify that functional effects or limitations of an impairment erroneously determined to be non-severe at Step 2 were, in fact, given consideration in subsequent steps").

Because ALJ Cordovani failed to adequately assess the functional effects of plaintiff's gambling addiction, a remand of this matter is appropriate. In doing so, I make no findings as to whether plaintiff's gambling addiction arises to the level of a severe impairment. It is well settled that neither I nor the Acting Commissioner should engage in *post hoc* efforts to determine what the ALJ would have done had the ALJ considered the issue. *See* McKinstry v. Astrue, 2012 WL 619112, *4 (D. Vt. 2012) aff'd, 511 Fed. App'x. 110 (2d Cir. 2013) ("[a] court must not engage in a *post hoc* effort to supplement the reasoning of the ALJ"); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) ("[a] reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action"). The Second Circuit has made it clear that "the propriety of agency action must be evaluated on the basis of stated reasons". Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir.1983).

Credibility Findings

Plaintiff testified that, among other things, his anxiety, depression and panic attacks prevent him from working (R. 44). Dr. Gupta, and LMSW Crimmins submitted an RFC, based upon plaintiff's pathological gambling addiction, as well as upon diagnoses of bipolar disorder and alcohol dependence in remission and various physical impairments (R. 344). They stated that plaintiff has "limited insight and judgment", and "difficulty with focus and attention during sessions as well as follow through". Id.

They jointly opined that plaintiff would have "no useful ability to function" with respect to (a) "work in coordination with or proximity to others without being unduly distracted"; (b) the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms is quote; and (c) and inability to "perform at a consistent pace without an unreasonable number and length of rest periods" (R. 346). They further opined that plaintiff would be "unable to meet competitive standards" in his ability to (a) "maintain attention for two hour segment"; (b) "maintain a regular attendance and being punctual within customary, usual strict tolerances"; (c) "accept instructions and respond appropriately to criticism from supervisors is quote; (d) "it along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes"; (e) "respond appropriately to changes in a routine work setting"; and (f) "deal with normal work stress". Id. They concluded that plaintiff would be absent from work more than four days per month and that his impairment would last at least 12 months (R. 349). In response to inquiry whether plaintiff could "manage benefits in his or her own best interest", they responded "no". Id.

Notwithstanding this record, ALJ Cordovani did not discuss whether plaintiff's ability to perform work activities would be negatively affected by his pathological gambling activities. Instead, he repeatedly stated that plaintiff's gambling activities demonstrated that he possessed greater functionality than he claimed. For example, ALJ Cordovani stated that plaintiff's gambling activities, as well as his visits to strip clubs and his use of Facebook, demonstrated "a greater degree of functionality" than Dr. Gupta's opinion indicated (R. 28); that plaintiff's "significant gambling . . . requires the ability to pay attention and persist at an activity" (id.); and that the fact that plaintiff gambles and visits casinos, among other things, is "inconsistent with the degree of limitations alleged" by plaintiff (R. 29).

However, ALJ Cordovani does not cite to any medical or vocational authority (or otherwise) that visiting a casino evidences that a person possesses sufficient concentration and persistence to perform work activities on a sustained basis in a competitive setting. He did not ask the vocational expert who testified at the hearing whether visiting a casino demonstrated the ability to perform work activities. Nor did he consider whether plaintiff's pathological gambling addiction would present negative influences on his ability to work in a competitive setting, such as unacceptable absences, which might be inferred from Dr. Gupta's RFC.

Upon remand, the Acting Commissioner should consider whether plaintiff's pathological gambling negatively impacts his ability to sustain work activity in a competitive setting.

## CONCLUSION

For these reasons, Plaintiff's motion for judgment on the pleadings [9] is granted to the extent that this case is remanded for further proceedings, consistent with the issues discussed above, and the Acting Commissioner's motion for judgment on the pleadings [13] is denied.

Dated: June 10, 2019

                                              /s/ Jeremiah J. McCarthy
                                              JEREMIAH J. MCCARTHY
                                              United States Magistrate Judge